# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* L. T. Mignot, Minor.

UNPUBLISHED
February 12, 2015

No. 322392
Macomb Circuit Court
Family Division
LC No. 2012-000033-NA

Before: CAVANAGH, P.J., and METER and SHAPIRO, JJ.

PER CURIAM.

Respondent mother appeals as of right from an order terminating her parental rights to a child. See MCR 3.993(A)(2). We reverse and remand for further proceedings.

In 2012, petitioner sought termination, at the initial disposition, of respondent's parental rights to three children.[1] The Department of Human Services (DHS) revised its goal and sought eventual reunification, but, in 2014, again sought termination. On the date scheduled for the termination hearing, the hearing referee indicated that extensive discussions had taken place "this morning" and that a "resolution" had been reached. The prosecutor (who was representing the DHS) indicated that the two older children would be placed into a guardianship and that respondent would release her parental rights to the youngest child.

The referee stated that "both the mother and the father have had an opportunity to speak with their attorneys and in order to execute voluntary releases of parental rights there's some things that I have to place on the record." The referee proceeded to examine respondent, who was incarcerated at the time but had been brought to the courthouse for the hearing. Respondent agreed that nobody had pressured her into releasing her parental rights, and she signed a document releasing them. However, when the referee asked her, "Now, ma'am[,] have you counseled with anyone regarding this decision today or spoken to anyone? I know you've spoken to your attorney," respondent replied, "I have not talked to my attorney yet." She also answered "[n]o" when asked whether she had "discussed this with any friends or a counselor or parents or anything like that." When the referee asked her whether she "had enough time to make this decision today," respondent replied, "I wish I had more time to think about it, but I guess I don't." When the referee asked her, "now, ma'am[,] do you feel that signing these

---

[1] Termination of the father's parental rights was also pursued, but he is not a party to this appeal.

releases today are in the best interest of [the child]," she answered, "[y]eah . . . [a]s long as he's staying where he's been." Respondent later stated, "I just don't understand why he can't be in the permanent guardianship too along with [the two other children]." She later reiterated that she "didn't understand it."

After respondent signed the release, the lower court entered an order terminating respondent's parental rights to the child.

Shortly after the release, respondent filed a letter with the court indicating that she had been falsely informed that her mother-in-law would be adopting the child and that if she had known that her brother-in-law was attempting to adopt she would not have signed the release. She filed a motion for reconsideration under MCR 2.992, stating that at the time of the release she was "under stress and unable to critically make a realistic decision concerning the termination of her parental rights . . . ." In the motion, she stated that she "stood alone and felt 'pressured' to agree to her rights being terminated."

There is no indication in the record that the court issued a ruling regarding the motion for reconsideration.

On appeal, respondent argues that the trial court failed to follow the requirements for a valid release. We review this issue for an abuse of discretion. See *In re Blankenship*, 165 Mich App 706, 711; 418 NW2d 919 (1988), and *In re Burns*, 236 Mich App 291, 292; 599 NW2d 783 (1999). A release of parental rights must be knowingly and voluntarily given. *Id*.; see also *In re Blankenship*, 165 Mich App at 711.

We are constrained to reverse and remand. First, respondent clearly indicated that she wished she had more time to think about her decision but believed that she did not. The referee failed to pursue this line of thought any further, simply stating, "Okay." This is in stark contrast to *In re Blankenship, id*. at 712, wherein the court "ordered a special recess to give [the mother] more time to think about her decision, after which she decided to sign the papers." Respondent's hesitation raises issues concerning the voluntariness of the release. Second, when the referee asked respondent if she felt the release was in the best interests of the child, she gave a conditional response, indicating, "[y]eah . . . [a]s long as he's staying where he's been." However, the child's "staying where he's been" was not a provision in the release document that respondent ultimately signed. This, along with respondent's admission that she did not understand how certain matters were being resolved, raises issues concerning whether the release was "knowingly" made. Lastly, respondent filed a timely motion for reconsideration under MCR 3.992(A), raising new concerns (e.g., her assertion that she had been unable to make a realistic decision at the time of the release), yet there is no indication in the record that the court issued a decision on this motion.

The record fails to demonstrate that respondent released her parental rights knowingly and voluntarily, and the court compounded the error by failing to issue any order regarding the motion for reconsideration. Under these circumstances, we must reverse.

Reversed and remanded for further proceedings.  We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Patrick M. Meter
/s/ Douglas B. Shapiro